# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:10CR387 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | OPINION & ORDER |
| | ) | |
| | ) | |
| BRIDGET M. McCAFFERTY, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court are a series of pre-trial motions. Specifically, the Court shall address:

- the defendant's motion to dismiss the indictment or to compel the government to elect on the grounds of duplicity (Doc. No. 135);

- the defendant's motion to dismiss the supplemental indictment for failure to state an offense (Doc. No. 198);

- the defendant's motion to dismiss the supplemental indictment or to compel the government to elect among various counts on the grounds of multiplicity (Doc. No. 199); and

- the defendant's (revised) motion for a bill of particulars (Doc. No. 200).

The government has responded to all motions.[1] On March 10, 2011, the Court held a

---

[1] Also pending are the defendant's motion to exclude a certain recorded phone conversation (Doc. No. 215), and the government's motion to preclude the defendant from offering her own out-of-court statements and to permit the introduction of statements of co-conspirators (Doc. No. 214). The Court will receive the government's proffer on the use of co-conspirators' statements on March 18, 2011, immediately after jury selection. Also pending is the defendant's motion to preclude the government from offering the testimony of its expert on the subject of judicial canons. (Doc. No. 216.) The Court shall issue a ruling on this motion in due course.

hearing on the motions that were at issue.[2] The Court is now prepared to issue a ruling on these motions.[3]

**Background**

A review of the procedural history in this criminal matter is essential to understanding the current state of the government's case against the defendant. On September 14, 2010, the government filed a 26-count Indictment against six defendants, including Defendant Bridget M. McCafferty (McCafferty or the defendant).[4] The Indictment grew out of an expansive investigation, conducted over a number of years, into allegations of public corruption and conspiracy in Cuyahoga County, Ohio. The charges against McCafferty were contained in Count 25, ¶ 390, and were limited to allegations that McCafferty violated 18 U.S.C. § 1001 by making five false statements to an FBI agent during the course of an investigatory interview. Specifically, ¶ 390 provides:

> On or about September 23, 2008, in the Northern District of Ohio, Eastern Division, Defendant BRIDGET M. MCCAFFERTY knowingly and willfully made the following false statements in a matter within the jurisdiction of the executive branch of the Government of the United States; (1) MCCAFFERTY denied that Dimora attempted to intervene in any cases before her court; (2) when asked if MCCAFFERTY called Pumper after a settlement conference (concerning the DAS case) and told Pumper that she tried to settle the case for less money, MCCAFFERTY denied the conversation occurred; (3) MCCAFFERTY denied that Frank Russo ever spoke to her about any cases in her court; (4) MCCAFFERTY denied giving Frank Russo any special consideration with regard to any cases before her; (5) MCCAFFERTY indicated that her only conversation

---

[2] The Court had previously entertained oral argument on the defendant's original motions to dismiss for duplicity and failure to state an offense on January 27, 2011.

[3] This ruling pertains only to Defendant McCafferty, based upon the arguments raised and evidence submitted by the government and Defendant McCafferty in this severed case.

[4] Along with McCafferty, defendants James C. Dimora, Robert W. Rybak, Jerry J. Skuhrovec, Michael D. Gabor, and William N. Neiheiser were also indicted. On December 7, 2010, the Court granted McCafferty's motion to sever her case from the other indicted defendants. (*See* Doc. No. 109.)

with Russo about her court would have been Russo or Dimora's remarks
that they heard from attorneys that she was doing a good job as a judge;
well knowing at the time that she made those statements to Special Agents
of the FBI that such statements were false.

On January 13, 2011, the defendant filed a motion to dismiss the
Indictment as to the defendant on duplicity grounds. Specifically, the defendant argued
that the charging of five separate false statements in a single count rendered the
Indictment duplicitous. (*See* Doc. No. 135.) At the January 27, 2011 hearing on this
motion, the Court asked defense counsel if it would have been preferable if the
government had separated the five statements into five separate counts, exposing the
defendant to five times the potential prison time.[5] Defense counsel stated that it would
have been preferable to charge the defendant with multiple counts under 28 U.S.C. §
1001. The Court took all of the then-pending motions, including the motion addressing
the issue of duplicity, under advisement.

On February 8, 2011, before the Court could issue its ruling on the
pending motions, the Grand Jury returned a Supplemental Indictment against the
defendant. (Doc. No. 181.) The Supplemental Indictment had the effect of taking the five
false statements identified in the original Indictment as the false statements the defendant
was alleged to have made, and separating them out into five distinct counts. The
Supplemental Indictment also included five new false statements that did not appear in

---

[5] Specifically, the court inquired: "So it would be better to have five separate counts?" Defense counsel J.
Michael Murray responded: "Yes. That's what the – the device [sic] of a duplicitous indictment, which they
outline, they're all kind of ways in which a defendant is prejudiced." (January 27, 2011 Hearing TR at 34-
35.)

the Indictment. In total, the defendant is now charged with ten counts of making false statements in violation of 18 U.S.C. § 1001.

The 10 false statements the defendant is now alleged to have made to the FBI agent are as follows: Count One alleges that the defendant "denied that Dimora attempted to influence her actions in any of the cases before her court;" Count Two alleges that the defendant "denied that Dimora attempted to intervene in any cases before her court;" Count Three alleges that the defendant "denied any involvement by Dimora in any of the cases before her court;" Count Four alleges that the defendant "denied telling Pumper that she tried to settle the DAS case for less money;" Count Five alleges that the defendant "denied trying to sway the DAS case settlement negotiations for Pumper;" Count Six alleges that the defendant "denied trying to settle the DAS case so that Pumper would pay less;" Count Seven alleges that the defendant "denied that Frank Russo ever spoke to her about any of the cases in her court;" Count Eight alleges that the defendant "said that her only conversations with Russo about her court would have been Russo's remarks that he heard from attorneys that she was doing a good job as a judge;" Count Nine alleges that the defendant "said that the closest thing about a case that either Dimora or Russo would have said to her was that he (Dimora or Russo) knew an attorney who said that he (the attorney) was in MCCAFERTY's court;" and Count Ten alleges that the defendant "denied giving Frank Russo any special consideration with regard to any of the cases before her court." (Doc. No. 181.)

It is interesting to note that the government did not ask the Grand Jury to return a "superseding indictment," but, instead requested and received what the government has labeled a "supplemental indictment." The government has explained that

4

this charging vehicle was selected "[b]ecause the original indictment in this case charged individuals other than [the defendant]," the government did not want the new charges against Defendant McCafferty to alter the other charges against the remaining defendants, and, therefore, the "new indictment does not 'supersede' the first indictment." (Doc. No. 211, fn. 1; Doc. No. 212 fn. 1.) Indeed, the government has indicated in its briefing that its decision to dismiss the original Indictment as against the defendant may depend upon the Court's ruling on the defendant's motion addressing the issue of multiplicity. As a result, the Court shall address the motions that relate to the original Indictment, as well as those challenging the Supplemental Indictment.

**Discussion**

*Defendant's Motion to Dismiss for Failure to State an Offense*

McCafferty challenges the sufficiency of ¶ 390 of the Indictment, and seeks to have the original Indictment dismissed for failure to state an offense. She further complains that the Supplemental Indictment did not correct this deficiency, and that this new charging instrument actually "suffers from new and additional deficiencies […]." (Doc. No. 198 at 1.)

Rule 7(c)(1) of the Federal Rules of Criminal Procedure requires that an indictment be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). *See United States v. Blandford*, 33 F.3d 685, 704 (6th Cir. 1994) (quoting *United States v. Piccolo*, 723 F.2d 1234, 1238 (6th Cir. 1983) (en banc) (The Sixth Amendment requires an indictment to "inform the defendant of 'the nature and cause of the accusation.'")). "An indictment is generally sufficient if it 'fully, directly, and expressly […] set[s] forth all the elements

5

necessary to constitute the offense intended to be punished.'" *United States v. Kuehne*, 547 F.3d 667, 696 (6th Cir. 2008) (quoting *United States v. Douglas*, 398 F.3d 407, 411 (6th Cir. 2005)). The defendant asserts that the Indictment, as it relates to her, and the Supplemental Indictment fail to meet this standard.

In support of her argument, McCafferty relies on a series of perjury cases, beginning with *United States v. Eddy*, 737 F.2d 564, 567 (6th Cir. 1984), which provide that "the indictment must set out the allegedly perjurious statements and the objective truth in stark contrast so that the claim of falsity is clear to all who read the charge." *Id.* at 567 (internal citation omitted). Underscoring the fact that neither the original Indictment, nor the Supplemental Indictment, set forth the precise questions posed by the FBI agent, and the exact responses given by McCafferty, she argues that, under *Eddy's* tutelage, the Court must strike these charging instruments because the allegations contained therein are "vague and ambiguous and fail to identify the alleged falsity of McCafferty's alleged statements with sufficient clarity to state the offense." (Doc. No. 134 at 8; *see* Doc. No. 198.)

The defendant's reliance on *Eddy* and its progeny is misplaced. In *Blandford*, the Sixth Circuit specifically rejected the use of *Eddy* and other perjury cases for determining the sufficiency of an indictment alleging violations under 18 U.S.C. § 1001. *Blandford*, 33 F.3d at 705. Instead, relying on *United States v. Gray*, 790 F.2d 1290, 1296-97 (6th Cir.), rev'd on other grounds, 483 U.S. 350 (1987), the Sixth Circuit observed that, under 18 U.S.C. § 1001:

> An indictment provides adequate notice to a defendant "when it permits the defendant to obtain significant protections which the guarantee of a grand jury

6

indictment was intended to confer." The sufficiency of an indictment is governed by "two preliminary criteria:"

> First, whether the indictment "contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet," and, secondly, "in case any other proceedings are taken against him for a similar offense whether the record shows with accuracy to what extent he may plead a former acquittal or conviction."

*Blandford*, 33 F.3d at 705 (quoting *Gray*, 790 F.2d at 1296-97) (internal citation omitted).

In disposing of the defendant's sufficiency argument, the court in *Blandford* found that:

> Notwithstanding the fact that the indictment did not set forth the precise statements made by Blandford, we find that the indictment satisfied the principles enunciated in *Gray*. The indictment alleged that Blandford had made material statements that were false or fraudulent and that he had done so knowingly and willfully. It set forth the nature of the statements as well as when and to whom they were made. It also specified that the statements pertained to an activity within the jurisdiction of a federal agency.

*Id*.

Similarly, while the original Indictment and the Supplemental Indictment fail to set forth the precise questions asked and the defendant's verbatim responses, they each clearly state that the defendant made material false statements and that she did so "knowingly and willfully." They also identify the date in which the statements were made, that they were made to FBI agents, and that statements pertained to activity within the "jurisdiction of the executive branch of the Government of the United States." As such, both charging instruments clearly and distinctly set forth the elements of the

offense.[6] *See United States v. McAuliffe*, 490 F.3d 526, 530-33 (6th Cir. 2007) (indictment charging mail fraud sufficient because indictment adequately alleged intent and materiality elements); *compare United States v. Landham*, 251 F.3d 1072, 1082 (6th Cir. 2001) (indictment charging violation of 18 U.SC. § 875(c) insufficient because indictment omitted 2 of 3 essential elements of the claim). Moreover, both documents provide adequate detail as to the nature of each statement such that the defendant is sufficiently appraised of what she "must be prepared to meet," and affords her protections against a subsequent prosecution for the same offense.[7] *See Gray*, 790 F.2d at 1297 (quoting *Russell*, 369 U.S. at 763-64). Nothing more is required by the Sixth Amendment for charging an offense under § 1001.

The defendant rejects *Blandford* as authority, noting that the defendant in *Blandford* had the benefit of two bills of particular. In evaluating the notice the indictment provided the defendant, the Sixth Circuit did observe that the defendant was supplied two bills of particular, which "provided a more detailed account of the precise

---

[6] 18 U.S.C. § 1001(a)  provides, in relevant part:
> Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willingly--
> (1)   falsifies, conceals or covers up by any trick, scheme, or device a material fact;
> (2)   makes any materially false, fictitious, or fraudulent statement or representation; or
> (3)   makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;
> shall be fined under this title, imprisoned not more than five years […].

[7] The defendant does not argue that the statements were not "material" within the meaning of the statute. "A statement is material for purposes of section 1001 if it has a natural tendency to influence, or be capable of affecting or influencing, a function entrusted to a governmental agency. It is not necessary to show that the statement actually influenced an agency, but only that it had the capacity to do so." *United States v. Steele*, 933 F.2d 1313, 1319 (6th Cir. 1991) (internal citations and quotations omitted). There can be no question that the defendant's statements could have influenced, in some way, the course of the FBI's investigation.

8

statements […].” *Id*.[8] Nonetheless, like the defendant in *Blandford*, the defendant, here, has been provided additional factual details in the form of the interviewing agent's 302 summary of the interview, along with the agent's notes. She has also been provided with the recordings of phone conversations, upon which the government has indicated that it intends to rely to prove the falsity of the defendant's statements. This information serves to flesh out, in even greater detail, the charges and the basis of the charges.

In fact, while the defendant complains that she is missing the "objective truth in stark contrast" that *Eddy* requires, it is clear that this information would add little to her ability to defend this case. At the March 10, 2011 motion hearing, the Court asked defense counsel how it would have crafted the indictment to provide this "objective truth in stark contrast." Counsel responded:

> Well, I guess one count could say that McCafferty, in response to a question as to whether or not Jimmy Dimora spoke to her and tried to influence her to favor Mr. Pumper over another litigant, she denied that in fact Mr. Dimora ever asked her to do that *when in truth and in fact, on such and such a date, as she well then and there knew, Mr. Dimora in fact said those exact things to her.*

(Doc. No. 231, March 10, 2011 Hearing TR at 39, emphasis added.) At least with respect to this example, it is clear that the defendant already knows what Mr. Dimora said because she has the recordings of the conversations upon which the government plans to rely at trial.[9] (*See* Session 13965, April 22, 2008 Phone Call from Dimora to Pumper and

---

[8] Of course, a bill of particulars cannot cure an otherwise defective indictment. *See United States v. Sturman*, 951 F.2d 1466, 1479 (6th Cir. 1991) (citing *Russell v. United States*, 369 U.S. 749, 769-70 (1962)).

[9] In fact, in addition to other evidence that the government might have, it appears, at a minimum, that the defendant has interceptions relating to each count of the Indictment and Supplemental Indictment. (*See* Sessions 13965, 14940, and Session 3720, July 15, 2008 Phone Conversation between Russo and Defendant McCafferty.)

Session 14940, May 2, 2008 Phone Call from Pumper to Defendant McCafferty.) Therefore, like Blandford, the defendant has all of the information necessary to adequately defend the charges in the Indictment and Supplemental Indictment.

Further, a review of the defendant's contentions with respect to individual false statements set forth in Paragraph 390 of the original Indictment and the Supplemental Indictment underscores the fact that the shortcomings the defendant perceives in these documents do not go to their sufficiency. For example, the defendant complains that the first false statement in the original complaint and in Count Two of the Supplemental Indictment, in which the defendant is alleged to have denied that Mr. Dimora had ever "intervened" in one of her cases, is vague. Noting that the word "intervene" has a specific meaning in the law,[10] the defendant suggests that her answer could have been literally true if the questioner was attempting to determine whether Mr. Dimora had ever participated in one of her cases as an intervenor.  According to the defendant, the Sixth Circuit rejected a similarly vague indictment in *United States v. Gatewood*, 173 F.3d 983 (6th Cir. 1999).

In *Gatewood*, the indictment alleged that the defendant, a government contractor, certified that he had made payments to subcontractors when he knew he had not made *full* payment. Because the defendant had made some payments, but not all payments, his certification was partially true. The court found that the indictment "presents a false dichotomy, because certifying that one has made payments to

---

[10] In connection with litigation, the term "intervene" means to "interpose in a lawsuit as a third party." Oxford Dictionaries, available at http://www.oxforddictionaries.com (2011).

subcontractors is not inconsistent with having yet to pay the subcontractors in full." *Id*. at 987. The Court ultimately determined that the indictment was defective.

In contrast, in *United States v. DeZarn*, 157 F.3d 1042 (6th Cir. 1998), the indictment alleged that the defendant falsely told military investigators that he did not accept campaign contributions at a "1991 Preakness Party." Defendant argued that his statement was literally true because there was no Preakness Party in 1991, but, instead in 1990. He claimed that he thought investigators were talking about a much smaller, and much different, party that took place in 1991 where no contributions were solicited. He argued that the indictment failed to demonstrate the "stark contrast" between the truth and the statement defendant made. The court rejected the argument, noting that even though the question was inaccurate, it was not ambiguous such that the defendant should have understood its meaning. In reaching this conclusion, the court observed that the meaning of the question was supplied by the context in which it was posed. Specifically, the court observed that "the question and answer must be examined in the context of the investigation as a whole and the state of the defendant's knowledge in order to determine whether ambiguity exists." *Id*. at 1048. The court found that it was clear from the entire interview that the questioner was referring to the 1990 Preakness Party and not some small dinner party that took place in 1991.

Similarly, in *United States v. Ahmed*, 472 F.3d 427 (6th Cir. 2006), the defendant made certain representations regarding his military service in applying for a TSA job. Specifically, he stated that he had never left a job under unfavorable circumstances, and he had never had his security clearance denied, suspended or revoked. The defendant argued that these answers were true because he was honorably discharged

11

(though he had been reassigned following misconduct) and his security clearance had not been revoked (though it had been "administratively downgraded"). *Id.* at 432. The court found that the defendant's argument really was "that under *some* conceivable interpretation of the questions, his answers would not have been false." *Id.* (emphasis in original). The court rejected this argument as a means to defeat the indictment, and stated that "that a defendant 'can postulate unstated premises of the question that would make his answer literally true' does not bar the possibility of liability." *Id.* (quoting *United States v. Cuesta*, 597 F.2d 903, 920 (5th Cir. 1979)). Noting that the defendant's understanding of the question was a matter for the jury, the court indicated that "[a]lthough the questions at issue here may indeed be broad, there is no basis to conclude that they display the kind of fundamental ambiguity that would invalidate the indictment." *Id.* at 433.

Like the defendant in *Ahmed*, McCafferty's argument really is that under some interpretation of the word "intervene" her answer is facially true. Whether McCafferty should have reasonably interpreted the term as the legal term of art of intervention rather than someone who meddles or interferes, will become apparent from the context in which it was asked--looking at the entire FBI interview.[11] Thus, the charging instruments, themselves, are not defective as to this allegation, and what the

---

[11] At one point, the government noted that "[b]ecause the alleged false statement in the indictment only gives notice of the nature of the allegation, it is entirely possible that the word "intervene" was not actually used by either the agents or the Defendant." (Doc. No. 114 at 6, n. 2.) (Later, however, at the March 10, 2011 Hearing, the government clarified that it is clear from the agent's 302 summary that the term "intervene" was actually used during the interview) (*See also* Doc. No. 211, fn.2.) While McCafferty's counsel argued at the motion hearing that this observation by the government merely highlights the fact that the Indictment fails to convey to the defendant information necessary for the preparation of her defense, the language still lays out the nature of the statement. It remains for the jury to decide whether the defendant believed that she was truthfully responding to the agent's question.

defendant believed the term "intervene" meant is a matter properly reserved for the jury. *See United States v. Kehoe*, 562 F.2d 65, 68 (1st Cir. 1977). ("[T]he possibility that the defendant understood the questions to be limited to one particular incident" does not raise the issue of "literal truth.")

McCafferty also complains that the second statement in the original Indictment, realleged in Count Four of the Supplemental Indictment, is unconstitutionally vague. This statement provides: "when asked if MCCAFFERTY called Pumper after a settlement conference (concerning the DAS case) and told Pumper that she tried to settle the case for less money, MCCAFFERTY denied the conversation occurred[.]"[12] (Indictment at ¶ 390.) She argues that it is unclear whether the denial goes to whether a conversation occurred at all, whether she discussed settlement with Pumper, or whether she said that she tried to bring in the settlement at a lower monetary amount. (Doc. No. 134 at 11.) There is nothing vague about this statement. It clearly identifies a conversation with Pumper, which took place after a settlement conference and, during which, McCafferty told Pumper that she tried to settle the case for less money. The sentence is written in the conjunctive, and specifically refers to a conversation that both took place after a settlement conference and related to the settlement.[13]

The defendant also argues that terms like "attempt to influence," "involvement," "sway," and "special consideration" carry a variety of meanings and

---

[12] Count Four of the Supplemental Indictment provides: "MCCAFFERTY denied telling Pumper that she tried to settle the DAS case for less money."

[13] As for the fifth statement in the original Indictment, the Court rejects the defendant's suggestion that the statement is fatally deficient because it states that the defendant "indicated," rather than "stated" that her only conversations with Dimora and Russo were limited to their understanding that McCafferty was doing a good job as a judge. The Indictment specifically advises the defendant that she is alleged to have "knowingly and willfully made" five "material false *statements* […]." (¶ 390, emphasis added.)

interpretations, and are ultimately a matter of opinion. The English language is far from precise, and words often are susceptible to more than one interpretation. That the defendant may have assigned one interpretation to a word or phrase, while the interviewing agent may have intended another, does not render the charging instruments fatally defective, but rather is a matter left for the trier of fact. *See Kehoe*, 562 F.3d at 68.

While neither Paragraph 390 nor the Supplemental Indictment should be held up as the model for indictment drafting excellence, each satisfies Rule 7(c)(1)'s requirement of a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). That neither document sets forth, in detail, the questions posed and the responses given does not render them ineffective. *See, e.g., Blandford*, 33 F.3d at 705 (indictment sufficient to allege a violation of § 1001 even though it "did not set forth the precise statements made by [the defendant]"). *See also United States v. Fernandez*, 559 F.3d 303, 328 (5th Cir. 2009) (indictment for murder sufficient under Rule 7(c)(1) even without alleging specific manner and means offense was committed; *United States v. Kuehne*, 547 F.3d 667, 696 (6th Cir. 2008) (indictment for use of firearm in connection with a drug offense sufficient under Rule 7(c)(1) though it failed to specify the particular underlying drug offense). The defendant's motion to dismiss the Supplemental Indictment for failure to state an offense is, therefore, DENIED.[14]

---

[14] For all of the same reasons, the defendant's original motion to dismiss the original Indictment for failure to state an offense (Doc. No. 134) is also DENIED.

*Defendant's Motion to Dismiss for Duplicity*

The defendant argues that the charging of five separate false statements in a single count rendered the original Indictment duplicitous. "An indictment is duplicitous if it sets forth separate and distinct crimes in one count." *United States v. Davis*, 306 F.3d 398, 415 (6th Cir. 2002). "As rules of pleading, the defects of duplicity and multiplicity are not fatal to an indictment but may be cured by reformulation. In determining whether there is duplicity or multiplicity the decisive criteria are legislative intent and separate proof. When legislative intent is ambiguous, the rule of lenity prescribes that doubt will be resolved against turning a single transaction into multiple offenses." *United States v. Duncan*, 850 F.2d 1104, 1108 n.4 (6th Cir. 1988) (citing *Bell v. United States*, 349 U.S. 81, 83-84 (1955)).

The ban against duplicitous indictments is premised on four primary concerns: first, the indictment may fail to give a defendant adequate notice of the nature of the charges against him; second, it may subject the defendant to prejudicial evidentiary rulings; third, it may result in an inadequate trial record to protect against subsequent prosecution for the same offense; and fourth, such indictment may present a risk that the jury may have convicted the defendant by a nonunanimous verdict. *United States v. Kakos*, 483 F.3d 441, 443 (6th Cir. 2007) ("[T]he primary concern is that a defendant may be deprived of his right to a unanimous verdict."); *United States v. Moloney*, 287 F.3d 236, 239 (2d Cir. 2002) (internal citation omitted) ("reasons underlying the rule against duplicitous indictments" include "protecting against double jeopardy in a subsequent prosecution"); *United States v. Kimberlin*, 781 F.2d 1247, 1250 (7th Cir. 1985). *But see, e.g., United States v. Buchmeirer,* 255 F.3d 415, 426 (7th Cir. 2001)

(duplicitous indictment did not violate right to notice because specificity of counts properly notified defendant of charges against him); *United States v. Sharpe,* 193 F.3d 852, 870-71 (5th Cir. 1999) (duplicitous indictment did not risk double jeopardy because indictment specifically included statements that were the foundation for the government's case).

Rule 7(c) permits a prosecutor to allege "in a single count […] that the defendant committed [the offense] by one or more means." Fed. R. Crim. P. 7(c). Courts have noted that it is appropriate to charge separate criminal acts in one count where the acts are part of a single conspiracy or continuing scheme. *See United States v. Kelley*, 461 F.3d 817, 830 (6th Cir. 2006) (numerous acts to garner over $100,000 from the same person properly plead in single count because all part of the same conspiracy); *United States v. Stewart*, 433 F.3d 273, 319 (2d Cir. 2006) (indictment charging "several different types of fraudulent conduct" not duplicitous because not different offenses but means of committing single offense); *United States v. Damrah*, 412 F.3d 618, 622-23 (6th Cir. 2005) (indictment charging multiple means of committing single offense not duplicitous).

In the context of false statement cases under 18 U.S.C. § 1001, the charging of multiple false statements in a single count is appropriate where the indictment also charges that the statements were made as part of a "scheme" under § 1001(a)(1). *See, e.g., United States v. Hubbell*, 177 F.3d 11, 14 (D.C. Cir. 1999) (indictment charging numerous false statements of concealment not duplicitous because count alleged scheme of concealment of material facts). While a number of conspiracies are plead throughout the Indictment, ¶ 390 does not allege that the defendant made the

16

false statements as part of a scheme under § 1001(a)(1). Rather, a fair reading of the original Indictment leads to the conclusion that the defendant had been charged with making false statements under § 1001(a)(2). Consequently, the government cannot rely on § 1001(a)(1) to justify the charging of several statements in one count.

Further, the defendant points to the Sixth Circuit's decision in *United States v. Dedman*, 527 F.3d 577 (6th Cir. 2008), wherein the court noted that, while the defendant waived the right to challenge his indictment on duplicity grounds by failing to raise the issue before trial, the grouping of several allegedly false statements in one count was duplicitous. Specifically, the court observed that under § 1001, "[s]eparate allegedly false statements […] are not 'multiple factual predicates' but rather are entirely separate offenses; even in [*United States v. Hixon*, 987 F.2d 1261, 1264 n. 3 (6th Cir. 1993)], with statements made on four separate occasions, the government had the good sense to charge each statement as a separate violation of § 1001 in its own count." *Id.* at 600, n.10.

The government points out that the duplicity language in *Dedman* is dicta, and is, therefore, not binding on this Court. It also suggests that applying the teaching in *Dedman* would be inappropriate in cases like the present action, where the false statements were made in the context of a single event. While it is unclear whether the false statements in *Dedman* were made during the same interview, the government underscores the fact that in *Hixon*, the case relied upon by the court in *Dedman,* false statements that were made "on four separate occasions." *Hixon*, 987 F.2d at 1264, n. 3.

Instead, the government directs the Court's attention to cases, such as *Duncan*, where the false statements were made in the course of a single event. The court in *Duncan* refused to find such an indictment duplicitous, and warned that:

17

> An indictment that charged a defendant who had made multiple false statements on a single tax return with multiple counts of violating the statute might expose the defendant to greater punishment than Congress intended and therefore be subject to dismissal as a multiplicitous indictment.

*Duncan*, 850 F.2d at 1111 n.7. Other courts have found it appropriate to charge multiple false statements in a single count where the statements were all made in the same event or on the same document. *See, e.g., United States v. Fassnacht*, Case No. 01 CR 63, 2002 WL 63523, *5 (N.D. Ill. Jan. 14, 2002) (false statements to IRS agent during the same interview plead in one count did not render the indictment duplicitous); *United States v. Goodrich*,[15] 919 F.2d 1365, 1368 (9th Cir. 1990) (in perjury case, multiple false statements plead in same interview not duplicitous); *United States v. Mangieri*, 694 F.2d 1270, 1281 (D.C. Cir. 1982) (multiple false statements in a single loan application charged in same count not duplicitous). *But see Shad v. Arizona*, 501 U.S. 624, 634-35 (1991) (disapproving of the practice in *Duncan*, and other courts, of distinguishing between acts within one "conceptual grouping," which are sufficiently similar to obviate the need for the jury to agree as to which act was committed, versus unrelated acts in "distinct conceptual groupings," which are "so unrelated that the jury must decide separately").

Here, the false statements the defendant is alleged to have made to the FBI were made in the course of a single interview over a short period of time. While the

---

[15] In *Goodrich*, the court observed that:

> The essential conduct that constitutes the making of a false material declaration is ordinarily the same regardless of the number of questions and answers it takes to elicit the tale, where a defendant or a witness tells a false story to exonerate himself or another. Also, it is well settled law that more than one specification of falsity may be included in a single count of perjury, as was done here.

*Goodrich*, 919 F.2d at 1368.

defendant believes that confining these related statements to one count is improper, the government would argue that separating them out into five separate crimes might have the effect of punishing the defendant beyond congressional intent.[16]

This debate, however, is academic in that any harm from charging multiple acts in a single count can be remedied by an augmented unanimity charge and special verdict forms. "Courts rejecting duplicity challenges to multiple-predicate counts, however, often premise their rulings on the condition that later augmented jury instructions will adequately protect the defendant against the risk of nonunamious verdict."[17] *Duncan*, 850 F.2d at 1108 n.4. *See United States v. Kakos*, 483 F.3d 441, 443 (6th Cir. 2007) (internal citation omitted). ("Proper jury instructions can mitigate the risk of jury confusion and alleviate the doubt that would otherwise exist as to whether all members of the jury had found the defendant guilty of the same offense."). *See, e.g., United States v. Starks*, 472 F.3d 466, 471 (7th Cir. 2006) (duplicitous indictment not fatal because risk of nonunanimous verdict cured by jury instruction on need for unanimous agreement and use of special verdict form); *United States v. Trammell*, 133 F.3d 1343, 1354-55 (10th Cir. 1998) (same).

The defendant suggests, however, that because she is raising her duplicity argument prior to trial, her remedy is to have the government either dismiss the

---

[16] As previously noted, at the January 27, 2011 hearing on this motion, counsel for the defendant stated that it would have been preferable to use the five statements as the foundation for five separate false statement counts. (January 27, 2011 Hearing TR at 34-35.)

[17] The risk of a guilty verdict in which individual jurors would not agree on the same false statements(s) appears to be the only concern that might arise from ¶ 390 of the Indictment, as it is written. The Court has already determined that the language is sufficient to fully apprise the defendant of the charges against her, and is, therefore, also sufficiently specific to guard against subsequent prosecution for the same offenses. Nor does it appear likely that the present drafting of the Indictment would lead to prejudicial evidentiary rulings, and the defendant does not suggest that this is a likely risk.

Indictment or elect which offense on which to proceed. It is true that a defendant will waive a duplicity argument if it is not raised prior to trial. *See Dedman*, 527 F.3d at 600 n.10; *United States v. Creech*, 408 F.3d 264, 270 (5th Cir. 2005); *United States v. Klinger*, 128 F.3d 705, 708 (9th Cir. 1997). It is equally true that one remedy available to a defendant faced with a duplicitous indictment is to have the government dismiss or elect the count or charge within the count on which the government will rely. *See United States v. Ramirez-Martinez*, 273 F.3d 903, 915 (9th Cir. 2001), overruled on other grounds by *United States v. Lopez*, 484 F.3d 1186, 1191 (9th Cir. 2007); *United States v. Hood*, 210 F.3d 660, 663 (6th Cir. 2000); *United States v. Robinson*, 651 F.2d 1188, 1194 (6th Cir.  1981). The defendant, however, offers no support for the idea that this is the only remedy available to correct the possible risk from a duplicitous indictment, and the Court finds none.

Instead, the law provides that "a defendant indicted pursuant to a duplicitous indictment may be properly prosecuted and convicted if *either* (1) the government elects between the charges in the offending count, or (2) the court provides an instruction requiring all members of the jury to agree as to which of the distinct charges the defendant actually committed." *Ramirez-Martinez*, 273 F.3d at 915 (emphasis added). *See Hood,* 210 F.3d at 663 ("A defendant may move, as did Hood, to require the government to 'elect either the count or the charge within the count upon which it will rely' or the court may 'particularize the distinct offense charged in each count' in its jury instruction."); *Robinson*, 615 F.2d at 1194 ("Defendant's remedy is to move to require the prosecution to elect […]. Additionally, a duplicitous or multiplicitous indictment is remediable by the court's instruction to the jury particularizing the distinct offense

charged in each count in the indictment.") *See also Trammell*, 133 F.3d at 1354-55 (noting that, even if the defendant had timely raised the issue of duplicity, "any possible error was cured by the district court's instruction"). *See, e.g., United States v. Manuskar*, 557 F.3d 219, 226-27 (5th Cir. 2009) (unanimity instruction held to guard against a non-unanimous verdict).

Thus, even if the Indictment is duplicitous, a properly augmented jury instruction, with special verdict forms, will eliminate any risk of a nonunanimous verdict. The defendant's motion to dismiss the Indictment for duplicity, therefore, is DENIED.

### *Defendant's Motion to Dismiss for Multiplicity*

Given the defendant's position that the original Indictment was duplicitous, and her counsel's position at the January 27, 2011 motion hearing that separating the false statements into multiple counts would have been preferred, it is not surprising that the government issued the Supplemental Indictment with multiple separate counts. While the defendant believed that the original Indictment was fatally flawed for charging too many statements in one count, the pendulum has now swung in the other direction causing the defendant to argue that the separation of these statements into individual counts renders the Supplemental Indictment fatally flawed as multiplicitous.

"'Multiplicity' involves charging the same criminal offense in two or more counts of an indictment or information," *United States v. Ragland*, 3 Fed. Appx. 279, 284 (6th Cir. 2001) (citing *United States v. Stanfa*, 685 F.2d 85, 86-7 (3rd Cir. 1982)). The harm of multiplicity is that it may result in a defendant being punished twice for the same crime, or may unfairly suggest that more than one crime has been committed. *United States v. Swafford*, 512 F.3d 833, 844 (6th Cir. 2008). "Where, as here, an indictment

includes more than one count charging the same statutory violation, the question is whether Congress intended the facts underlying each count to constitute a separate unit of prosecution." *United States v. Hinkeldey*, 626 F.3d 1010, 1013 (8th Cir. 2010).

When it is alleged that multiple false statements have been made, "each statement must set forth a separate lie or false statement, and in cases where the facts present a close question of whether separate lies exist, it is relevant to inquire into the degree to which the second statement impaired the body before which it was made." *United States v. Clarridge*, 811 F. Supp. 697, 703 (D.D.C. 1992). *See Ragland*, 3 Fed. Appx. at 284 (Two questions posing the same inquiry cannot support multiple counts of perjury inasmuch as "a single lie merits only one punishment."); *United States v. De la Torre,* 634 F.2d 792, 794 (5th Cir. 1981) (only false statements which are "separate, distinct and unrelated" are appropriately charged as separate counts); *United States v. Williams*, 552 F.2d 226, 228 (8th Cir. 1977) (quoting *United States v. Gebhard*, 422 F.2d 281, 289-90 (9th Cir. 1970)) ("[I]t is improper for the government [to] bludgeon a witness who is lying by repeating and rephrasing the same question, thus creating more possible perjury counts.")

Thus, it is improper for a government agent merely to repeat or rephrase the same question in order to extract multiple false statements. *See Clarridge*, 811 F. Supp. at 704 (internal citation omitted) ("Separate counts are only appropriate when the 'inquiries [are] directed to a separate facet of the overall transaction being investigated.'") However, the Court is also mindful that "[b]ecause testimony alleged to be perjurious must be proved to be literally false, *United States v. Bronston*, 409 U.S. 352, 360-61, 34 L. Ed. 2d 568, 935 S. Ct. 595 (1973), it is entirely proper for the

Government to frame indictments that cite separate specifications of perjury for answers that vary in subtle but meaningful ways." *United States v. Jones*, 351 F. Supp. 2d 121, 127 (S.D.N.Y 2004). The task before this Court will be to determine whether the questions and answers varied in subtle but meaningful ways, or whether the interviewing agent merely repeated or rephrased the same question resulting in one alleged lie repeated multiple times.

The defendant claims that three groupings of counts are multiplicitous. First, the defendant argues that Counts 1, 2, and 3 are multiplicitous. In Count One, the defendant is alleged to have denied "that Dimora *attempted to influence* her actions in any cases before her court;" in Count Two, the defendant is alleged to have denied that "Dimora *attempted to intervene* in any of the cases before [the defendant's] court;" in Count Three, the defendant is alleged to have denied "*any involvement* by Dimora in any of the cases before her court." (Emphasis added.)

The defendant argues that "attempted to influence," "attempted to intervene," and "any involvement" all ask the same question, and, therefore, extracted the same alleged lie. The government maintains that each question requires proof of a different fact because "attempted to influence" is confined to an attempt by Dimora to affect one of the cases on the defendant's docket, while "any involvement" relates to any action actually taken by Dimora in any case. Further, "attempt to intervene," according to the government, relates to efforts by Dimora to insert himself into one of the defendant's cases. (March 10, 2011 Hearing TR at 28-29.)

Two facts prevent the Court from adopting the government's position. First, at the motion hearing on March 10, 2011, the government conceded that each of

these three questions was directed toward the relationship between Dimora and the cases on the defendant's docket.[18] Second, and perhaps more telling, the government conceded that if the defendant had answered the first of the three questions in the affirmative, the agent would not have asked the other two. (March 10, 2011 Hearing TR at 25.) It is clear, therefore, that each of these questions was not designed to seek different information, and that the agent was merely rephrasing the same question in an attempt to ensure that the defendant fully understood what that information sought actually was. The Court finds that the first three counts are multiplicitous.[19]

The defendant also argues that Counts 4, 5, and 6 are multiplicitous. Count 4 alleges that the defendant "denied telling Pumper that she tried to settle the DAS case for less money;" Count 5 alleges that the defendant "denied trying to sway the DAS case settlement negotiations for Pumper;" and Count 6 alleges that the defendant "denied trying to settle the DAS case so that Pumper would pay less […]."

The government insists that Counts 4 and 6 require proof of different facts because Count 4 asks whether the defendant called Pumper to tell him that she tried to settle the case for less money, while Count 6 inquires into whether the defendant did, indeed, try to settle the case for less money. The former focuses on the defendant's

---

[18] Specifically, AUSA Antoinette Bacon said, "[t]rue, Your Honor, they're about, generally speaking, the same broad topic, each question, that broad topic being did Jimmy Dimora improperly contact the judge, try to do it, attempt to do it, in a way that gave somebody an advantage over another in the litigation." (March 10, 2011 Hearing TR at 26.)

[19] While not dispositive, the Court's conclusion is buttressed by the fact that each subsequent lie in this grouping would not have further hampered the FBI's investigation. Rather, a similar lie on the same day to the same governmental agency did not further impair the operations of the FBI. *See Clarridge*, 811 F. Supp. at 703 (applying the "impairment to government operations" inquiry to determine multiplicity).

24

placement of the alleged ex parte phone call, while the latter goes to the defendant's efforts during settlement. The Court agrees that Counts 4 and 6 are not multiplicitous.

Further, the government argues that Counts 5 and 6 seek different facts because Count 6 asks the limited question of whether the defendant tried to get a lower settlement price for Pumper, while Count 5 could include the defendant's attempts to get any favorable results (monetary or non-monetary) for Pumper. According to the government, Count 5 would encompass any favorable terms that the defendant could have sought for Pumper. The Court is not convinced. The purported falsity in each count is established solely by proof that the defendant tried to get a more favorable settlement for Pumper. Counts 5 and 6 are, therefore, multiplicitous. *See, e.g., Clarridge*, 811 F. Supp. at 705 (While one question asked the defendant about his knowledge of a military shipment to Iran, without limitation as to the source of that knowledge, and the second question specifically inquired as to his knowledge and the source, both were directed to the same facet of the investigating committee's inquiry and were multiplicitous.)

Finally, the defendant complains that the charges in the last grouping, Counts 7, 8 and 9, are multiplicitous. Count 7 alleges that the defendant denied "that Frank Russo ever spoke to her about any of the cases in her court;" Count 8 alleges that the defendant stated that "the only conversation with Russo about her court would have been Russo's comments that he heard from attorneys that she was doing a good job as a judge;" and Count 9 alleges that the defendant stated that "the closest thing about a case that either Dimora or Russo would have said to her was that he (Dimora or Russo) knew an attorney who said that he (the attorney) was in McCafferty's court."

The defendant claims that all of these statements charge an offense based on statements regarding facets of the same issue. The government insists, however, that these statements each go to different inquiries. Count 7, the government notes, is limited to "cases" before the defendant, while Count 8 involves anything having to do with the defendant's court and could include "matters" before the defendant, which could entail more than just cases.[20] Count 8 also was limited to what Russo "heard." As for Count 9, the government notes that it is the only count that includes any conversations with Dimora. The government also underscores the fact that the defendant previously attacked the statements in Counts 7 and 8 as duplicitous. The government complains that the defendant cannot "have it both ways." (Doc. No. 212 at 5.)

The Court is not persuaded by the government's distinction between a "case" and a "matter."[21] Moreover, the Court finds that each of these statements goes to the same inquiry; namely, what, if any, conversations did the defendant have with either Dimora or Russo regarding cases in her court. The Court finds, therefore, that this grouping contains multiplicitous counts.

*What remedy?*

Having held that certain counts suffer from multiplicity, the Court is faced with the question of what to do about it. The defendant insists that the proper remedy is to force the government to dismiss or elect among the multiplicitous counts. The

---

[20] The government also argued that while Count 7 deals with any conversations the defendant had with Russo regarding her court, Count 8 is limited to the narrow and specific conversation wherein Russo stated that "I heard from attorneys you're doing a great job as a judge." (March 10, 2011 Hearing TR at 33.)

[21] At the motion hearing on March 10, 2011, the government explained that a matter in the defendant's court could include events, such as requests for wiretaps, which do not receive a case number and appear on a judge's docket. (March 10, 2011 Hearing TR at 34-35.)

26

government complains that requiring it to elect will hamper its ability to fully present its case to the jury, arguing that each count sets forth a separate false statement made by the defendant during the interview. While the government concedes that multiple convictions would not result in multiple punishments because the convictions would merge at sentencing, it represents that it can prove the falsity of each statement made, and that it should be permitted to present each and every statement to the jury for its consideration.

"[T]he prosecution has broad discretion in bringing criminal cases […]." *United States v. Thornburg*, 921 F.2d 654, 657 (6th Cir. 1990) (citing *Ball v. United States*, 470 U.S. 856, 859 (1985)). *See United States v. Platter*, 435 F. Supp. 2d 913, 915-16 (N.D. Iowa 2006) ("The government has considerable discretion in fashioning the counts of an indictment.") Further, "the district court has discretion in deciding whether to require the prosecution to elect between multiplicitous counts especially 'when the mere making of the charges would prejudice the defendant with the jury.'" *Thornburg*, 921 F.2d at 657 (quoting *United States v. Reed*, 639 F.2ds 896, 904 n.6 (2d Cir. 1981)).

When multiplicity becomes apparent before trial, it may be appropriate to require the government to chose the count on which it will continue and dismiss the remaining counts.[22] *See Swafford*, 512 F.3d at 845-46; *United States v. Seda*, 978 F.2d 779, 782 (2d Cir. 1992), overruled on other grounds by *United States v. Chacko*, 169 F.3d

---

[22] The defendant cites *Clarridge* in support of her request for election, but *Clarridge* is easily distinguishable. In *Clarridge*, the court found that, not only were the perjury charges multiplicitous, they were also so specifically similar that there was a risk of inconsistent verdicts if the jury were to find the defendant guilty of one and not the other. *Clarridge*, 811 F. Supp. at 705. Because the responses to both questions addressed the same November 19, 1984 meeting between Oliver North and the defendant, the threat of inconsistent verdicts made election the only option. Here, while many of the charges are multiplicitous, the slight distinctions between each statement, coupled with the imprecision of the English language, mean that it would be possible for the jury to find certain false statements to have been made without finding others, all without the possibility of inconsistent verdicts.

140 (2d Cir. 1999). The government argues that the Court need not require election in this case, however, because all of the statements merge under the United States Sentencing Guidelines such that the defendant would only be exposed to one combined guideline sentence.

In *United States v. Thornburg*, the Sixth Circuit held that the district court did not err in refusing to require the government to elect between counts of possession of ammunition and possession of a firearm. In reaching this conclusion, the court relied upon the Supreme Court's decision in *United States v. Ball*, wherein the high court approved of the practice of waiting until sentencing to correct any possible multiplicity. The court in *Thornburg* observed that:

> *Ball*, then, was ample authority for the district court to defer to the government's discretion to conduct the prosecution in this case upon multiplicitous counts, recognizing that the court could merge the convictions after the jury verdicts are recorded.

*Thornburg*, 921 F.2d at 657 (citing *Ball*, 470 U.S. at 859).

Likewise, in *United States v. Johnson*, 130 F.3d 1420, 1426 (10th 1997), the Tenth Circuit held that firearm convictions under 18 U.S.C. §§ 922(g)(1) and 922(g)(3) were multiplicitous, but that the government was not required to elect between the two counts before trial. In reaching this conclusion, the court noted that it was within the district court's discretion to permit the government to present both theories to the jury. *Id. See United States v. Shea*, 211 F.3d 658, 673 (1st Cir. 2000) ("[I]t is clear enough that the government is entitled to get both theories before the jury, whether in one count or two. In all events, we do not treat the multiple 'convictions' as clear error.")

28

Here, the Court believes that the government should be permitted to present its case, as charged, to the jury, given its representation that each of the statements set forth in the charges was denied by the defendant. Any danger of multiple sentences for the same offense will be alleviated at sentencing when all of the statements found by the jury to be false, if any, will merge under the sentencing guidelines. Further, the Court finds that the possibility that the defendant will be prejudiced by the mere charging of multiple counts under § 1001 is minimal, inasmuch as the entire case revolves around the answers the defendant gave to one FBI agent during the course of a single interview. *See, e.g., United States v. Harwell*, 426 F. Supp. 2d 1189, 1192 (D. Kan. 2006) ("The risk of false impression here does not appear to be great or unfairly prejudicial to the defendant, as the entire case involves simply the defendant's alleged possession of two weapons on a single day [...].") *See Thornburg*, 921 F.2d at 657 (Dismissing the defendant's argument that he was unduly prejudiced due to the government's presentation of a felon in possession of firearm count and a felon in possession of ammunition count, where the two counts merged for sentencing purposes.)

The potential for prejudice can be further reduced by jury instructions that advise the jury that all of the alleged false statements took place in one two and one-half hour interview, and that require the jury to consider each statement separately. *See, e.g., United States v. Chipps*, 410 F.3d 438, 449 (8th Cir. 2005) (citing *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (holding that multiplicitous counts did not prejudice the defendant because "'[t]he district court's instructions to the jury indicated that each charge was to be considered separately [... and because] [j]uries are presumed to follow instructions.")). In addition, the submission of all counts on a single verdict form, or

grouped in such a way that each grouping of multiplicitous counts is contained on the same verdict form, will also lessen the possibility of prejudice. *See e.g., United States v. Moore*, 149 F.3d 773, 779 (8th Cir. 1998).

The government was content to try this case on one count of making false statements, but the defendant insisted on baiting the government by challenging that approach as duplicitous and by maintaining that multiple counts would have been preferable. The Supplemental Indictment was the inevitable consequence.[23] The Court finds that the government has a right to present the case as charged against the defendant, and that any potential prejudice can be neutralized by proper limiting instructions, jury verdicts, and the merger of multiplicitous counts at sentencing. The defendant's motion to dismiss the Supplemental Indictment or to require the government to elect on grounds of multiplicity is DENIED.

### Defendant's Revised Request for a Bill of Particulars

Finally, the defendant seeks a bill of particulars that would set forth the precise questions posed by the FBI agent, the precise answers given by the defendant, the "objective truth in stark contrast" for each false statement, and "[i]n what respect [each statement] was false." (Doc. No. 33 at 1.) She also requests that the government identify the "and others" identified in various counts, and state the length of time the FBI interview is alleged to have consumed. The government denies that the defendant is entitled to this relief.

---

[23] Even the defendant concedes that the government had a right to charge several counts under § 1001. At the March 21, 2011 hearing, defense counsel, while contending that the 10-count indictment was multiplicitous, stated that "And our position is that probably there should really be only four counts, five at the most, depending on how you quite look at it." (March 10, 2011 Hearing TR at 17.)

Rule 7(f) provides for the filing of a request for a bill of particulars. Fed. R. Crim. P. 7(f). "The function of a bill of particulars is 'to minimize surprise and assist [the] defendant in obtaining information needed to prepare a defense and to preclude a second prosecution for the same crimes.'" *United States v. Crayton*, 357 F.3d 560, 568 (6th Cir. 2004) (quoting *United States v. Salisbury*, 983 F.2d 1369, 1375 (6th Cir. 1993)). "Thus, the test in ruling on a motion for a bill of particulars is whether providing such details is necessary to the preparation of the defense and avoidance of prejudicial surprise." *United States v. Musick*, 291 Fed. Appx. 706, 723 (6th Cir. 2008). *See United States v. Matos-Peralta*, 691 F. Supp. 780, 791 (S.D.N.Y. 1988) ("The ultimate test must be whether the information sought is necessary, not whether it is helpful.")

"A bill of particulars 'is not meant as a tool for the defense to obtain detailed disclosure of all evidence held by the government before trial[,]'" *Crayton*, 357 F.3d at 568 (quoting *Salisbury*, 983 F.2d at 1375), nor may a defendant use a bill of particulars to discover the government's legal theory of the case. *United States v. Gabriel*, 715 F.2d 1447 (10th Cir. 1983); *United States v. Marks*, 364 F. Supp. 1022, 1030 (E.D. Ky. 1973), aff'd, 520 F.2d 913 (6th Cir. 1975), rev'd on other grounds, 430 U.S. 188 (1977). Further, the decision to require a bill of particulars is left to the discretion of the trial court. *See United States v. Musick*, 291 Fed. Appx. 706, 723 (6th Cir. 2008); *United States v. Perkins*, 994 F.2d 1184, 1190 (6th Cir. 1993).

As discussed above, the Court has determined that both ¶ 390 of the original Indictment and the Supplemental Indictment set forth sufficient detail in which to fully advise the defendant of the charges against her, including the details surrounding the underlying telephone conversations she is alleged to have had with Dimora, Pumper and

Russo, as well as the nature of the statements she made to the FBI regarding these conversations. With respect to discovery, the defendant has also been provided with the recordings of the intercepted calls, as well as the FBI interviewer's notes from the defendant's interview and the government's 302 document summarizing the interview. The defendant, therefore, has before her the facts and circumstances leading to this prosecution. Consequently, a bill of particulars is not necessary to avoid surprise at trial or to permit the defendant to prepare her defense. *See Musick*, 291 Fed. Appx. at 724 (the materials provided the defendant, when viewed in totality, adequately apprised the defendant of the charges against him and prevented prejudicial surprise at trial, such that a bill of particulars was not necessary); *United States v. Blanchard,* 542 F.3d 1133, 1140-41 (7th Cir. 2008) (motion for bill of particulars properly denied because indictment and knowledge of evidence seized sufficient to inform defendant of charges and enable defendant to prepare defense). In addition, as the Court has already determined, both charging instruments are sufficiently detailed to ensure that the defendant will not be twice prosecuted for the same offenses. *See United States v. Ridley*, 199 F. Supp. 2d 704, 708 (S.D. Ohio 2001) (indictment sufficiently detailed to overcome double jeopardy concerns).

For all of these reasons, the defendant's revised motion for a bill of particulars is DENIED. For the same reasons, the defendant's previous motion for a bill of particulars is also DENIED.

**Conclusion**

For all of the foregoing reasons, the defendant's motion to dismiss the indictment or to compel the government to elect on the grounds of duplicity (Doc. No.

135), the defendant's motion to dismiss the supplemental indictment for failure to state an offense (Doc. No. 198), the defendant's motion to dismiss the supplemental indictment or to compel the government to elect among various counts on grounds of multiplicity (Doc. No. 199), and the defendant's revised motion for a bill of particulars (Doc. No. 200) are DENIED.

The Court has now ruled on the sufficiency and propriety of the Indictment and Supplemental Indictment. These documents together, however, present duplicative charges for five of the statements. As such, as to those five statements, the charges are duplicative and multiciplicitous, and the government must select or elect so that only one charge remains as to each statement. The government shall have leave until March 17, 2011 at 1:00 pm to file a motion to dismiss those charges it does not plan to prosecute.

**IT IS SO ORDERED**.

Dated: March 16, 2011

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

33